(Decided 18th June, 1891.)

GOTTSCHALK & Co., SCHUFELDT & Co., and THOMAS B. KERR *vs.* JOSEPH C. SMITH, and J. LELAND HANNA, Trustees, and others.

*Insolvency — Agreement of Petitioning Creditors — Discharge.*

Section 11 of Article 47, of the Code of Public General Laws, which provides that, "the estate of the insolvent shall be distributed according to the principles of equity, and no creditor shall acquire a lien by *fieri facias* or attachment, unless the same be levied before the filing of his petition," applies alike to voluntary and involuntary insolvency.

An agreement on the part of the petitioning creditors not to object to the discharge of their insolvent debtor, cannot in any manner affect or prejudice other creditors who may see fit to object to his discharge.

A creditor will not be permitted to claim a distributive share of the insolvent estate, and at the same time impeach the adjudication by which the debtor was adjudged to be insolvent.

Gottschalk & Co., *et al. vs.* Smith and Hanna, *et al.*

APPEAL from the Court of Common Pleas.

The auditor stated an account in which he allowed as prior liens, those attachments which were sued out before the filing of the petition, praying the adjudication of Forster and Clark as insolvent debtors, and also the attachment of Gottschalk & Co., which was sued out on the same day the petition was filed, and distributed the balance in hand among the general creditors. Exceptions were filed by Geiske & Neiman, and Schmidt & Friday, general creditors, to the allowance of priority to the claims of each of the attaching creditors, and by the trustees in insolvency to the allowance of priority to the claim of Gottschalk & Co., and of Paris, Allen & Co., and to the allowance of interest on the claims of the other attaching creditors, and by Thomas B. Kerr and Shufeldt & Co., who sued out attachments subsequent to the day of the filing of the petition in insolvency, to the disallowance of their claims to a priority in payment to general creditors. The Court (DUFFY, J.,) overruled the exceptions to the priority of the claims of all the attaching creditors, except Gottschalk & Co., and the exception to the interest on the claims of all attaching creditors, except Paris, Allen & Co. It sustained the exceptions to the interest allowed Paris, Allen & Co., and to the claim of priority of Gottschalk & Co., and overruled the exceptions of Kerr and Shufeldt & Co. From this order this appeal was taken.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, FOWLER, McSHERRY, and BRISCOE, J.

*Albert Ritchie,* for the appellants.

The following authorities were cited: *Salmon vs. Pierson,* 8 *Md.,* 299; *Walsh vs. Boyle, et al.,* 30 *Md.,* 267; *Thomas vs. Brown & Lowndes,* 67 *Md.,* 512; *Buschman vs. Hanna and Smith,* 72 *Md.,* 1; *Kennedy vs. Boggs,* 5 *H. & J.,*

Gottschalk & Co., *et al. vs.* Smith and Hanua, *et al.*

411; *Armstrong, Cator & Co. vs. Martin & Marr,* 57 *Md.,* 401; *Whyte vs. Betts Machine Co.,* 61 *Md.,* 182; *Becker vs. Whitehill,* 55 *Md.,* 572; *Collier and Shea vs. Hanna and Smith,* 71 *Md.,* 256; *Munnickhuysen, Carson, et al. vs. Magraw,* 57 *Md.,* 172; *Westbrook Manufacturing Co. vs. Grant,* 60 *Maine,* 88; *Miller vs. Black,* 1 *Penn.,* 420; *Berthelon vs. Betts,* 4 *Hill,* 577; *Schiff & Co. vs. Solomon, et al.,* 57 *Md.,* 584; *In Re Scammon,* 6 *Bissell,* 130; *Bell vs. Leggett,* 7 *N. Y.,* (3 *Seld.,*) 176; *Bandon vs. Becher,* 3 *Clark & Finn.,* 479; *Black on Judgments, secs.* 293, 508.

*William S. Bryan, Jr.,* and *Edgar H. Gans,* for the appellees.

The following authorities were cited: *Ellicott vs. U. S. Ins. Co.,* 7 *Gill,* 319; *Laupheimer vs. Rosenbaum, et al.,* 25 *Md.,* 219; *Rhodes & Williams vs. Amsinck,* 38 *Md.,* 355; *Morton vs. Grafflin,* 68 *Md.,* 567; *Pinckney vs. Lanahan,* 62 *Md.,* 448.

ROBINSON, J., delivered the opinion of the Court.

Proceedings in *involuntary insolvency,* were instituted against Forster, Clark & Co., and pending the proceedings, and before they were adjudicated to be insolvents, attachments were issued by certain creditors, and the main question is whether the attaching creditors thereby acquired a lien upon the property of the insolvent debtors; and this, turns upon the construction of sec. 11, Art. 47, of the Code, which says: "The estate of the insolvent shall be distributed according to the principles of equity, and no creditor shall acquire a lien by *fieri facias* or *attachment,* unless the same be levied *before* the filing of his petition." The language of the last sentence, it will be observed, is *"his petition,"* thus showing, it is argued, that the Legislature meant, that this section should apply to cases, only of *voluntary insolvency,* where the application is by the petition of the

debtor. In the original Act of 1854, chapter 193, and in the old Code, the language is, *"the petition,"* and why the pronoun *"his"* was substituted for the Article *"the"* in the present Code, is a matter we are unable to explain. Be that as it may, we all agree, that the provisions of this section apply alike to *voluntary* and *involuntary* insolvency; and that the Legislature meant, that *in all cases of insolvency,* the property of the insolvent, shall be distributed according to the principles of equity, and that no creditor should acquire a lien by attachment or by any other process, unless the same shall have been levied *before the proceeding* in insolvency was instituted.

In fact, since the decision in *Pinckney vs. Lanahan,* 62 *Md.,* 448, this can hardly be considered an open question. The proceeding in that case, was in involuntary insolvency, and after the filing of the petition, and before the debtors had been adjudged to be insolvents, an attachment was issued by a creditor, and the Court held that the title of the trustee in insolvency related back to the filing of the proceeding, and *was a bar to the attachment.*

In *Gottschalk's Case,* however, it is contended that the attachment was, in fact, issued before the filing of the petition in insolvency. But this contention can hardly be pressed, in the face of the testimony of Mr. Fry, who prepared the petition, and who says it was filed in the Clerk's Office about eleven o'clock A. M., and this was several hours before the attachment was issued and laid in the hands of the garnishees.

Then, again, it is insisted, that these several attachments are in no manner affected by the adjudication in insolvency, because the adjudication, it is said, was made with the consent of the debtors, and in pursuance of an agreement between them and the petitioning creditors, whereby the latter were not to object to their discharge in insolvency. This agreement, however, further provides, "that nothing herein contained, shall

be construed, as to interfere in any way with, or prejudice the right of the permanent trustee or trustees, to take such proceedings as may be appropriate to recover the property of the insolvents, or either of them, or to set aside any preferences that may have been made by them or either of them, or to vacate any deed or deeds, or conveyances heretofore made by the said insolvents, or either of them.'' This at best is merely an agreement on the part of the petitioning creditors that they themselves would interpose no objection to the discharge of the debtors, but it did not and could not in any manner affect or prejudice other creditors, who might, if they saw fit, file objections to the discharge in insolvency. And besides, the adjudication was made by a Court having jurisdiction of the parties, and of the subject-matter, and it is not pretended or alleged that it was obtained by *fraud or collusion, even if it could be* impeached collaterally,—a question we shall not now stop to consider. Moreover, the parties now making this objection are here claiming a distributive share of the insolvents' estate, which is ready for distribution among the creditors, and they will not be permitted to come into Court, and claim the fund arising from the sale of the property of the insolvents, and at the same time, to impeach the adjudication by which the parties were adjudged to be insolvent. So, in any view in which this case may be considered, the order appealed from must be affirmed.

· *Order affirmed.*

(Decided 18th June, 1891.)