In the Matter of CONTINENTAL MID-
WAY CORPORATION.

No. 10695.

United States District Court
D. Maryland,
Bankruptcy Division.

July 28, 1960.

W. Graham Boyce, Jr., Baltimore, Md., for Chenille Mfg. Co.

Mitchell Stevan, Baltimore, Md., for the Trustee.

CHESNUT, District Judge.

This petition to review an order of the Referee has required a close consideration of the Maryland law and practice with regard to determining whether the judgment creditor in this case, who claims priority in payment, validly acquired a lien on personal property of the judgment debtor as against the Trustee in Bankruptcy. The order of the Referee determined that the creditor did not effectively obtain a lien and therefore was not entitled to priority in payment over general creditors. The controlling facts of the case as contained in the certificate of the Referee, and not here substantially challenged by counsel for the judgment creditor, are as follows:

1. The Chenille Manufacturing Company, Inc., obtained in due course a judgment against the Continental Midway Corporation (now the bankrupt) for $1490.01 with interest and costs in the Court of Common Pleas of Baltimore City on July 19, 1956.

2. On July 26, 1956 counsel for the creditor issued a fi. fa. on the judgment and had it delivered to the sheriff for service. The next return day in the court was the first Monday of August 1956, and at that time the sheriff made a return of nulla bona on the writ.

3. On August 14, 1956 counsel for the judgment creditor delivered a second fi. fa. to the sheriff which again was returned nulla bona on the next return day, the first Monday of September 1956.

4. Again on September 11, 1956 counsel for the judgment creditor delivered a third fi. fa. to the sheriff, the return day for which was the first Monday in October 1956, and it also was returned nulla bona.

5. On November 23, 1956 the Circuit Court of Baltimore (an equity court) appointed receivers for the debtor corporation who promptly took possession of the assets. The involuntary petition in bankruptcy in this case was filed December 13, 1956. Subsequently the Trustee, having taken possession of certain personal property of the bankrupt, sold the property consisting of office furniture, fixtures and equipment located at 1500 N. Chester Street, Baltimore, Maryland, for the net sum of $1330.

6. On January 30, 1957 the creditor filed its claim as an unsecured creditor (that is, stating that it held no security for its claim) in the amount of $1519.96, representing the amount of the judgment plus interest and costs. On July 26, 1957 the creditor filed a petition alleging in substance that he was entitled to priority in payment by reason of a lien on the personal property above referred to which had been sold by the Trustee. And with respect to the fi. fa.

issued September 11, 1956, it appears from correspondence filed in the case that the creditor requested or demanded that the sheriff levy on certain furniture and equipment in the premises 1500 N. Chester Street, alleged to be the property of the debtor. But the sheriff refused to do so saying that his deputy was informed when he started to make such a levy that the property did not belong to the debtor, and the sheriff then declined to make the levy unless the creditor would take "supplemental proceedings" in court or furnish the sheriff with an indemnity bond. This not being done the sheriff in due course returned this third writ of fi. fa. nulla bona. The Referee in his certificate stated that by virtue of testimony produced before him after the bankruptcy intervened, he found as a fact that as of September 11, 1956 there was office equipment and furniture in the premises 1500 N. Chester Street belonging to the debtor which could have been levied on by the sheriff. The Referee held hearings on the creditor's petition on September 19, 1957, August 6, 1959, which was adjourned until November 13, 1959, and finally on January 15, 1960, concluded the matter by the order of that date denying priority.

The principal contention of counsel for the creditor is that upon the delivery to the sheriff of the fi. fa. order issued July 26, 1956 the creditor thereby became entitled to a lien on all the personal property of the debtor and that the lien so acquired continued up to and including the taking of possession of the debtor's personal property above mentioned by the Trustee in Bankruptcy, and that therefore the creditor is entitled to priority in payment of at least the net sum realized by the Trustee on the sale of the office furniture and equipment. I understood counsel for the creditor to place his principal dependence upon the fi. fa. of July 26, 1956 because under section 67 of the Bankruptcy Act (11 U.S.C.A. § 107) Liens and Fraudulent Transfers, a lien obtained within four months before bankruptcy

and when the debtor is insolvent would itself fall for that reason. On this basis the effect of the fi. fas. issued in August and September would be invalidated if, as counsel seem to concede, the debtor could be shown to have been insolvent at that time. However, as the Referee made no finding as to insolvency of the debtor on the possible invalidity of a lien obtained within four months prior to the bankruptcy, I think it necessary to include a consideration of not only the first fi. fa. issued July 26, 1956 and the return thereof, but also the returns made to the second and third fi. fas. in August and September respectively.

The contention of counsel for the Trustee is that even assuming that the issuance of a fi. fa. from the Clerk of the Court and the delivery of the same to the sheriff under Maryland laws constitutes a lien on personal property of the debtor thereafter levied and scheduled by the sheriff in due course of return, nevertheless as there was no actual levy in this case on any of the furniture of the debtor and no schedule made or returned, and more particularly because the return to the first and each of the subsequent fi. fas. made by the sheriff was nulla bona, therefore any inchoate lien which might have arisen on the issuance of the fi. fa. was terminated and dissolved upon an official return of nulla bona; and that the lien could only have been revived by another fi. fa. on which the sheriff made a return of goods levied and scheduled and as no such return was ever made by him but there was a return of nulla bona in due course of time on all three writs and as the judgment creditor made thereafter no effort to subject the debtor's property to a lien until after the intervention of bankruptcy, the creditor has no proper basis for claiming priority in payment as a claim secured by a lien.

In a succinctly worded opinion the Referee decided that the creditor in this case has not established a lien and therefore denied priority in payment. I agree with the conclusion of the Referee, but

think it will be worth while to develop the law applicable to the decision in more detail.

We must first turn to the Bankruptcy Act itself. It is not disputed that the Trustee in Bankruptcy succeeds in title to the assets of the bankrupt only to the extent that they have not been previously voluntarily or involuntarily by operation of law, subjected to valid claims of third persons. Section 67 (11 U.S.C.A. § 107) provides that liens obtained against the property of the bankrupt within four months prior to the bankruptcy are invalidated if obtained when the debtor was insolvent. The section does not expressly deal with liens obtained more than four months prior to the bankruptcy but it has been held by the Supreme Court in Straton v. New, 1931, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060 that it is the clear implication of the law that such latter liens are valid and enforceable and that the determination of their validity is dependent upon the laws of the State where the property is situated. There is no dispute on this point in this case. It therefore follows that the question as to the validity of the liens here claimed by the creditor must be determined by the applicable and controlling Maryland law and practice.

In beginning the examination of the latter question it must first be borne in mind that Maryland is a so-called "common law" State. That is, by the first Constitution of the State in 1776 the law of England was adopted, insofar as was compatible with our institutions. And a similar declaration has been made in subsequent Constitutions, including the latest of 1867, whereby it is provided in Art. 5 of the Declaration of Rights, shortly stated, that the English law as it prevailed in 1776 continues to be the Maryland law subject, however, to the statutes of this State thereafter enacted subject to Maryland constitutional provisions. This is, of course, well known but possibly it is not always sufficiently borne in mind in particular cases.

With respect to the effect of judgments against a debtor, it had long ago been provided by a Maryland statute that the judgment itself constituted a lien on real property including certain leaseholds. Code 1957, Art. 26, §§ 20 and 21. See also Maryland Rules, Rule 620. But I am not aware that it has ever been thought or held that a judgment constituted ex propria vigora a lien of any kind on tangible personal property. By the early English law this could be done only by issuing from the court where the judgment was obtained a writ of fieri facias (shortly, popularly called a fi. fa.). This was an early English writ and was in effect an order to the sheriff of the court to enforce a judgment against the debtor by levy, seizure and sale of his personal property to the extent needed to satisfy the judgment. I understand that in practice the sheriff, after receiving the writ, proceeded thereunder to seize the goods of the debtor and to schedule them and report to the court what he had done. This report, it is said, should have been made in time to allow the parties in interest to file objections thereto; but in practice, at least in Maryland, it has been customary for the sheriff to make his return to the court of what he has done at the next succeeding return day of the court which, in Baltimore City, has generally been the first Monday of the succeeding month. And if the sheriff is unable to locate and seize and schedule the goods of the debtor, he made a return of nulla bona. When such a latter return is made the function of the writ has been completely discharged. But the creditor thereafter can obtain another fi. fa. order to the sheriff for other proceedings thereon and possibly more successful.

The earliest legislation on this subject is to be found in the 16th section of the English Statute of Frauds enacted by Parliament in the 29th year of the reign of Charles II in 1676. That well-known Act is, of course, in force in Maryland, except where later modified by statute or judicial decision. See

Alexander's British Statutes, p. 511. Prior thereto the date of the attachment of the lien under the fi. fa. was the date of the issuance of the writ by the clerk; but the effect of the statute was to change the date to the time of the receipt of the writ by the sheriff who was thereby required to note the date of his receipt of the writ on the writ itself. And I understand that it has always been the uniform practice in Maryland for sheriffs receiving a writ of fi. fa. to endorse thereon the time of its receipt; and in Baltimore City, I am told that the sheriff endorses not only the day but also the hour of the day when it was received.

By many early decisions it is said that the date of the attachment of the lien under a fi. fa. begins when the sheriff receives the writ; but there are decisions to the effect that it is an implied condition that the creditor has the obligation to see that the writ should be promptly complied with by the sheriff and if there is undue delay the lien in favor of the particular judgment creditor may be lost by more active diligence on the part of some other creditor issuing a fi. fa. and securing an earlier levy and scheduling of goods seized by the sheriff. See Myers Co. v. Annapolis Banking & Trust Co., 1936, 170 Md. 198, 183 A. 543. But where the creditor obtaining the writ of fi. fa. is properly diligent in having it executed by the sheriff, there are numerous Maryland cases which state in effect that the lien thereby secured dates from the receipt of the writ by the sheriff. Selby v. Magruder, 1825, 6 Har. & J., Md., 454; Coombs v. Jordan, 1831, 3 Bland, Md., 284; Cunningham v. Offutt, 6 Fed.Cas. page 977, No. 3,484 (opinion by Judge of the Circuit Court of the District of Columbia in 1838); Prentiss Tool & Supply Co. v. Whitman & Barnes Mfg. Co., 1898, 88 Md. 240, 41 A. 49. See also Martin G. Imbach, Inc., v. Deegan, 1955, 208 Md. 115, 117 A.2d 864, and opinion by Chief

Judge Thomsen of this Court in United States v. Levin, D.C.Md.1955, 128 F. Supp. 465, and a review of the Maryland cases on the subject in an article by Judge Allan W. Rhynhart of the Peoples Court of Baltimore, 14 Md.Law Rev. 203.

More importantly, however, in the instant case the sheriff never successfully executed any of the three successive writs of fi. fa. but in due course thereafter made the return of nulla bona in each case. The fullest discussion that I have found in any Maryland case dealing with such a situation is that given by Chancellor Bland in the case of Coombs v. Jordan, 1831, 3 Bland, Md., 284, at page 325 where in his general discussion with regard to the beginning and ending of a lien sought to be obtained by a judgment creditor under a fi. fa. he said: "And, upon six similar principles, as a judgment does not, of itself, give rise to any lien upon personal property; and as the lien upon it can only commence, according to the statute of frauds, from the day of the actual delivery of a *fieri facias* into the hands of the sheriff, so it continues no longer, by virtue thereof, upon such property than it may be levied upon by such writ of *fieri facias;* that is, until its return day; after which, if it can be. so continued at all, it can only be by the immediate renewal of such execution, or the instant delivery of another *fieri facias* to the sheriff."[1]

Counsel for the creditor seeks to support his contention by reliance almost wholly on the case of Selby v. Magruder, supra. The question in that case was presented to the court on a case stated, which, on first reading, seems very complex and involved, but on close reading and analysis and elimination of immaterial details can be simply stated. The final issue was a contest of priority between two separate judgment creditors each of whom had issued a fi. fa. to the sheriff. In March 1820 in the Circuit

1. Theodoric Bland, the Maryland Chancellor, had been a Judge of this United States District Court for Maryland from 1819 to 1824 when he resigned to become Chancellor of Maryland, a judicial office which existed in the State from 1776 until it was abolished by the Constitution of 1851.

Court for Montgomery County, Creditor No. 1 issued a fi. fa. to the sheriff returnable the next November Term to realize on a judgment for large sums of money in amount over $1,000. The sheriff levied on all goods of the debtor which he could find and scheduled them as to value in the amount of $958.87½ and noted on the return that the remainder of goods of the debtor on which he had been instructed to levy could not be found because they had been secreted. In the meantime in the June Term 1820 the debtor, then apparently a resident of the District of Columbia, suffered a judgment against him in the Circuit Court for Washington County in the District of Columbia in consequence of which he apparently applied for the benefit of an insolvency or bankruptcy act of Congress applicable to the District of Columbia and was discharged from debts thereunder, and on the same day executed a deed of trust for the benefit of all his creditors to one Magruder, and this deed was promptly recorded in Montgomery County, Maryland. On November 14, 1820, judgment Creditor No. 2 issued a fi. fa. to the sheriff to recover on a judgment in his favor in Montgomery County under which on January 1, 1821 the sheriff seized the property of the debtor which he had previously returned as secreted by the debtor. In the meantime on December 2, 1820, Creditor No. 1 issued a second fi. fa. to the sheriff under which the latter also on January 1, 1821 levied on the property of the debtor which he had previously returned as having been secreted. Subsequent to January 1, 1821 and before the sheriff had taken any further action toward selling any of the goods of the debtor under either of the fi. fas. Magruder, the Trustee, replevied the debtor's goods from the sheriff (Selby), and by consent of the parties the goods were sold by the Trustee and the proceeds substituted for the goods. The question presented to the court was whether judgment creditor No. 1 or No. 2 should receive the proceeds of sale in satisfaction of his judgment. On these

particular facts peculiar to that case, the holding of the Maryland Court was that creditor No. 1 was entitled to the proceeds of sale because the sheriff had been prevented, not by his fault or lack of diligence, but by the fraudulent action of the debtor in secreting the residue of his property over and above that which had been in fact levied on by the sheriff under the first fi. fa. I think it quite apparent that the case was decided on its own particular facts which are materially different from those in the instant case where at no time were any goods actually seized or scheduled by the sheriff, but in each case the fi. fa. was returned in due course nulla bona. And I note that in later decisions the Maryland Court held that where the sheriff had not made a levy before the return day he could not properly do so thereafter. Gaither v. Martin, 1852, 3 Md. 146; Busey et al. v. Tuck et al., 1877, 47 Md. 171. I find nothing in the Selby case or in any other English or American decision brought to my attention, to warrant the conclusion that the inchoate lien arising in favor of a judgment creditor and affecting a judgment debtor's personal property has the effect in law of continuing after the sheriff has fully performed his duties under the writ and made a return of nulla bona, not successfully challenged by appropriate action in the case by the judgment creditor.

■ In Freeman on Executions, 3d ed. Vol. 2, p. 1021, s. 202 (1900) will be found a full discussion of how long a lien obtained by the issuance of a fi. fa. to the sheriff will continue. The author states that it does not continue after the writ has been in due course returned by the sheriff as, of course, is the case where the writ is returned nulla bona. In support of the author's conclusion he cites a case of Maul v. Scott, C.C.Dist. of Columbia, 1822, Fed.Cas., No. 9306, 2 Cranch, C.C. 367 where the Court held that any lien arising upon the receipt of the writ by the sheriff is extinguished upon the return of nulla bona by the sheriff. See also 33 C.J.S. Executions

§ 123, page 289 et seq., where the law is quite fully discussed as to the nature of a writ obtained by a judgment creditor on the issuance of an execution and the duration thereof. The general effect is stated to be that, in the absence of local legislation to the contrary, the writ obtained by the issuance of a fi. fa. is simply a writ to secure satisfaction of the judgment upon actual execution by the sheriff, and that when this is done by levy and seizure putting the property in the actual possession and control of the sheriff, the property can subsequently be realized upon by sale; and conversely where no levy or seizure has been made and the writ is returned by the sheriff without finding the property, as for instance a return of nulla bona, the lien does not thereafter continue unless subsequently revived by another writ; but if the sheriff does seize the goods the date of the lien thereon relates back to the time of the delivery of the writ to the sheriff. The discussion indicates quite clearly that any lien said to have been obtained at the time of the receipt of the writ by the sheriff is inchoate only until it becomes consummate by the seizure. In the instant case counsel for the Trustee contends that as there was no seizure under any of the three writs of fi. fa. issued in this case, there never became a consummated lien of any kind. I am inclined to think this view is sound and that when the Maryland cases speak of a lien arising upon delivery of the writ to the sheriff, what is meant is that the lien then arising is inchoate only and does not become consummate until the sheriff makes his seizure and files the schedule with his return.

I appreciate that it would seem on the facts stated by the Referee, counsel for the creditor though clearly diligent in his effort to secure a lien by the repetitive fi. fas. thinks that he has been unfairly frustrated in his efforts either by the failure of the sheriff to have been more effective in executing the writ or by fraud or misrepresentation on the part of some one thought by counsel to have been acting for the debtor, in informing the sheriff when he was attempting to levy on the goods that there were no goods on the premises belonging to the debtor. But I know of no principle of law which could be applied here as against the Trustee in Bankruptcy to justify the finding of the existence of a lien on merely equitable grounds when there had been no actual execution by the sheriff of any of the three orders of fi. fa. and when indeed in the instant case the sheriff had made a return to the Court showing that he had found no goods of the defendant on which to levy and schedule, and therefore in each case made the return of nulla bona.

Counsel for the creditor makes a complaint against the sheriff and says that he would have asserted a claim against him if there had not been so much delay in the bankruptcy proceedings before the order of the Referee now reviewed. But, of course, that collateral matter cannot be considered here by the Court.

The duties of the sheriff with regard to the return of writs delivered to him are stated in the Md.Code of 1957, Art. 87, §§ 5, 10, 11, 12 and 14. In this case the sheriff duly made returns on each of the three fi. fas. handed to him; and the creditor at no time challenged the return of nulla bona so made by the sheriff. Counsel have not been able to call to my attention any Maryland statute changing the English law and practice as it was in 1776 affecting the duties of the sheriff in respect to writs of fi. fa. and I have not been able to find any. Counsel for the creditor calls attention to the correspondence with the sheriff regarding the writ of fi. fa. issued September 11, 1956 in which the creditor urged the sheriff to levy on certain alleged personal property of the debtor and asked the sheriff to confer with counsel for the debtor in support of the creditor's assertion, to which the sheriff replied that he could not accept that suggestion and requested that the creditor furnish him a bond of indemnity against foreseeable liability in making a mistaken seizure, or take supple-

mentary proceedings in court to establish the ownership of the goods as those of the debtor. The creditor did not comply with either request. I have always understood that the sheriff had the right to insist upon a bond from the creditor where there was reasonable doubt as to the ownership of the goods, and it was so held in Robey v. State, Use of Mallery, 1901, 94 Md. 61, 50 A. 411 in an opinion by Chief Judge McSherry after an extended review of the English and American authorities on the point.

I therefore conclude that the Referee correctly decided the case and his opinion is affirmed.