HARRIS, TRUSTEE, ETC. *v.* MAX KOHNER, INC.

[No. 99, September Term, 1962.]

*Decided January 10, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Louis J. Sagner,* with whom was *Sanford A. Harris* on the brief, for the appellant.

*William Hoffenberg* for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore City, allowing Max Kohner, Inc. (Kohner) the sum of $659.29 as a preferred claim.

Although the appellant suggests that there are two questions to be answered, they may conveniently be combined into one, and stated as follows: If the personalty of a debtor be transferred to a trustee under a deed of trust for the benefit of creditors, does a judgment creditor, who has had a writ of *fieri facias* delivered to the sheriff prior to the assumption of jurisdiction over the debtor's estate by the court, have a valid lien and a priority on the debtor's assets, if the levy be made by the sheriff on the same day that the court assumed jurisdiction over the debtor's estate, and before the return day of the writ?

The facts are not in dispute. Sometime prior to November 28, 1961, Kohner recorded a judgment against one Wiegman, the appellant's assignor, in the People's Court of Baltimore City in the amount of $659.29. On that date, Kohner placed a writ of *fi. fa.* in the hands of the Chief Constable of the People's Court. On December 1, 1961, a Constable went to levy execution on the property of the judgment debtor, located at 3210 Eastern Avenue. He was met there by the appellant who had been named trustee under a deed of trust for the benefit of Wiegman's creditors, dated December 1, 1961. The deed of trust, together with a bond, had been filed on that date, and the Circuit Court, Judge Allen presiding, had passed an order

assuming "jurisdiction of the estate of David Wiegman." When the Constable was met by the appellant, the appellant was in the process of taking inventory of the debtor's property pursuant to his duties as trustee. Upon instructions from the People's Court, and over appellant's objection, the Constable made his levy. The debtor's property was advertised for sale by the trustee, and the parties stipulated that he should make said sale, holding the proceeds thereof subject to subsequent determination by the court as to Kohner's claimed priority. The sale was made, and, thereafter, Judge Allen passed an order sustaining Kohner's claim. This appeal followed.

The appellee concedes, as it of course must, that the obtention of judgment, alone, creates no lien upon a judgment debtor's personal property. Cf. Maryland Rule 620 (September 1958 Ed. in force as of November 28, 1961). In the instant case, however, Kohner had not only secured a judgment, but had also obtained a writ of *fieri facias* and placed it in the hands of the Chief Constable. At common law, when an execution was issued, it became a lien upon and bound the debtor's goods by relation from the test-day of the writ. *Jones v. Jones,* 1 Bland 443, 448. This principle frequently worked hardship upon an innocent purchaser of goods from a judgment-debtor, who bought them in the interval between the *teste* of the writ and the day on which it was given to the sheriff to be executed. To remedy this, it was enacted in the Statute of Frauds, 29 Ch. 2, Chapter 3, Section 16, "that * * * no Writ of *Fieri facias* * * * shall bind the Property of the Goods against whom such Writ of Execution is sued forth, but from the Time that such Writ shall be delivered to the Sheriff, Under-Sheriff or Coroners, to be executed: * * *." 2 *Alexander's British Statutes* (Coe's Ed.), 511, 512, 551, 552. This statute is in force in Maryland.

Professor Poe says:

"The meaning and effect of this statute are that *until the writ is actually delivered to the sheriff,* the defendant may lawfully and validly sell or otherwise dispose of his goods; and his assignee acquiring title in good faith will be protected against the execution-

creditor. But *after the writ is once delivered* to the sheriff, the goods are virtually in the custody of the law, and are made subject to the lien of the execution. Accordingly, an assignee or purchaser from the debtor then buys them at his peril, for it will be the right and the duty of the sheriff to seize and sell them under the *fi. fa.,* notwithstanding the alienation by the judgment-debtor in the interval between the delivery of the writ to the sheriff and the actual levy."

2 Poe, *Pleading and Practice,* § 666. Mr. Evans gives practically the same interpretation of the statute at pp. 478 and 479 in his *Maryland Practice* (1867). And dating the inception of a lien upon a judgment debtor's personalty from the time a writ of *fi. fa.* is delivered to the sheriff for execution seems to be the prevailing view throughout this country, although there are a few States, which, usually by statutory enactments, date the inception of the lien from the time the property is seized and not before. 30A Am. Jur., *Judgments,* § 522; 33 C.J.S., *Executions,* § 124.

The above statement of Professor Poe should, perhaps, be qualified by adding that the lien on the judgment debtor's goods attaches only to goods located within the sheriff's bailiwick. And the delivery of the writ to the sheriff must be made, in good faith, for the purpose of its execution. *Myers Co. v. Banking & Trust Co.,* 170 Md. 198, 183 A. 543. We are not called upon at this time to consider what happens to the writ after its return date.

An unbroken chain of decisions of this Court supports the interpretation given to the statute by Professor Poe and Mr. Evans. *Jones v. Jones, supra; Selby v. Magruder,* 6 Har. & J. 454; *Harris v. Alcock,* 10 G. & J. 226, 251; *Furlong v. Edwards,* 3 Md. 99, 113; *Prentiss Co. v. Whitman & Barnes Co.,* 88 Md. 240, 243, 41 A. 49. See also *United States v. Levin,* 128 F. Supp. 465 (U.S. D.C., Md., opinion by Thomsen, J.) and *In Re Continental Midway Corporation,* 185 F. Supp. 867 (U.S. D.C., Md., opinion by Chesnut, J.) both stating Maryland law. And cf. *Meyers Co. v. Banking & Trust Co., supra.*

In *Furlong,* this Court stated: "The position assumed by the

learned judge who delivered the opinion below, as respects *the time* when the creditor acquires his lien, is in our judgment erroneous. * * * The case of *Harris v. Alcock* [*supra*], in our own court expressly decides, that the issuing and levying of a *fieri facias,* secures for the creditor a priority or lien upon the debtor's equitable interest in personal property covered by a mortgage, *which lien dates from the time the execution was placed in the officer's hands."*

The *Prentiss Co.* case, *supra,* is closely in point here. There, a creditor's bill was filed against a debtor on February 9, 1894. On February 12th, the appellee secured a judgment against the debtor, and a *fi. fa.* was issued thereon on February 19th, which was laid in the hands of the sheriff at about 11:30 a.m. on that date. At 1:00 p.m. on said February 19th, a Receiver for the debtor was appointed by the court, and the Receiver immediately filed his bond. At 2:20 p.m. on the same date, the sheriff levied upon personal property belonging to the debtor. There, as here, it was agreed that the Receiver should make the sale, reserving to the judgment creditor whatever lien or priority he had obtained. The question at issue was whether the Receiver or the judgment creditor was entitled to the proceeds of the sale of the property. In holding that the judgment creditor had a priority, the Court pointed out that the Receiver was vested with all of the debtor's assets as soon as he qualified (which was prior to the levy), and stated the question "we think, is settled by the fact that the receiver was not appointed until sometime after the *fi. fa.* was placed in the hands of the sheriff. * * * A lien fastens upon personal property from the time of the delivery of the writ of *fi. fa.* to the sheriff."

The appellant, in his brief, deals quite fully and elaborately with the proposition that goods in *custodia legis* are not subject to "levy" under a writ of *fieri facias.* Judge Allen conceded that that proposition was, generally, a valid one, but stated that it was not the issue in the instant case. He held that if a valid lien were created on November 28, when Kohner delivered the writ to the Constable, or if an "inchoate lien" were then created which later became consummate as of that date (by relating back to the date of delivery to the sheriff), then

the *custodia legis* was that of the People's Court and the appellant "took title subject to it."

In the view that we take of the case, we do not reach the question of which court had the legal custody of the debtor's goods and chattels. We are not called upon to settle a dispute between the Constable of the People's Court and the trustee appointed by the Circuit Court as to who had the authority to conduct the sale of the goods. The parties arranged that by stipulation. The trustee appointed by the Circuit Court did conduct the sale, and he then requested the court to instruct him as to the distribution of its proceeds. Judge Allen said: "The principal issue here is one of priority, and a determination of that issue settles all others." We agree.

We stated in *Plitt v. Stevan*, 223 Md. 178, 183, 162 A. 2d 762: "It has been recognized that a trustee for creditors stands in the shoes of his assignor and takes the property subject to all the equities against the assignor." We pointed out above that under Maryland law a judgment creditor, who, promptly after its issuance and on, or before, its return day, in good faith lays a writ of *fi. fa.* in the hands of the proper officer for execution, obtains a priority, or lien, upon the goods and chattels, which are subject to execution under the writ, within the bailiwick of the executing officer. Therefore, the judgment creditor was entitled, we think, to a priority whether the goods sold were in *custodia legis* under the authority of the Circuit Court or the People's Court at the time of the levy (or attempted levy) thereon by the Constable. The time of the levy in the instant case, or its validity, is not controlling, but the time of the delivery of the writ to the Constable is crucial. The same sequence of events developed in the *Prentiss Co.* case, *supra;* namely, *fi. fa.* laid in the hands of the sheriff, receiver appointed by court and qualified by filing bond, and, thereafter the sheriff levied upon personalty belonging to the debtor and claimed by the Receiver. This Court, as pointed out above, had no difficulty in finding that the judgment creditor had a priority. We hold that Judge Allen was correct when he passed the order granting Kohner a priority.

The appellant lays great stress upon two cases, which he contends do not support the statements concerning the Mary-

land law made above: *Gottschalk v. Smith,* 74 Md. 560, 22 A. 401; and *In Re Continental Midway Corporation, supra. Gottschalk* is not in point here. The question there involved was the proper construction to be given Code (1957), Article 47, Section 11, and we specifically call attention to the fact that the case at bar is not an insolvency proceeding. It is interesting to note that three of the Judges, McSherry, Fowler, and Briscoe, who sat in *Gottschalk,* afterward also sat in *Prentiss Co.,* but no mention of *Gottschalk* is made in the opinion therein. Under these circumstances, it is certainly very unlikely that the decision in *Prentiss Co.* changed the law as enunciated in *Gottschalk,* as claimed by the appellant.

There is nothing in the opinion in *Continental* that conflicts with the opinion in the instant case. In that case, the judgment creditor issued three consecutive *fi. fas.,* all of which were returned *nulla bona.* Almost two months after the last return day, receivers were appointed by the court to take possession of the debtor's assets; and Judge Chesnut held, in the ensuing bankruptcy proceeding, that when the writs of *fi. fa.* were returned *nulla bona,* any inchoate lien, or liens, which may have been acquired by the judgment creditor by reason of placing said writs in the hands of the Sheriff, expired upon the returns of *nulla bona.* As stated above, we do not here reach the question of the effect of a return of *nulla bona.*

*Order affirmed, with costs.*