ILLI, INC. ET AL. *v.* MARGOLIS, TRUSTEE FOR STAN MARTIN, LIMITED

[No. 48, September Term, 1972.]

*Decided November 14, 1972.*

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*William Graham Boyce, Jr.,* for appellants.

*James R. Avnet,* with whom was *Irwin M. Sussman* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

The circumstances of this case, though complex, are not in dispute since all the parties have accepted the factual findings of the master in chancery. The essence of this appeal revolves around the propriety of the trial court's denial of priority of payment of claims to seven judgment creditors of Stan Martin, Limited, a corporation that has transferred its assets to a trustee, Aaron Margolis, appellee, under a deed of trust for the benefit of creditors. The appellants, Illi, Inc., Rucker Industries, Inc., Brookfield Furniture Co., Modeline Company, Youngs, Inc., Gerdau Company, and Katzenback and Warren, Inc., which are all represented by the same counsel, at different times prior to July 1970 and in vary-

ing amounts, each obtained judgment against Stan Martin. These corporations, with the single exception of Brookfield, obtained judgment in The People's Court of Baltimore City; Brookfield obtained its judgment in the Court of Common Pleas. All of the appellants attempted to receive satisfaction of their judgments by use of a writ of *fieri facias.*

Brookfield and Youngs each directed issuance of a *fi fa* on their judgments in the spring of 1970. Pursuant to the authority of the writs, a levy was made before their respective return dates; but no sale was ever conducted. Rather than pursue execution to sale, these two appellants accepted an alternative method of reducing the indebtedness. When the president of Stan Martin visited the appellants' attorney, he produced a balance sheet indicating solvency and asked that the goods levied upon not be sold as it might frustrate attempts at refinancing which were then under way. Instead, he offered to pay $50 a week to each of these creditors until the refinancing was accomplished, at which time the balance would be paid in full. This plan was acceded to and in fact regular payments were made for a number of weeks thereby reducing the debt of each creditor by $700. Unfortunately, no further financing was obtained and the weekly payments ceased. But, before a sale could be conducted, the assignment to Margolis, trustee, for the benefit of creditors was made.

The writs of the five remaining appellants were not delivered into the hands of the constable until November 2, 1970. However, before any levy was actually made under these writs, the Circuit Court of Baltimore City, on November 4 of that year, in an equity proceeding, assumed jurisdiction of the estate created by the deed of trust. Two days after its filing, counsel for the appellants became aware of this assignment and court order and wrote to the constable advising him that, "The property cannot be levied on under this set of circumstances because the goods are in the custodia legis of the trustee. I would appreciate very much if you would return the

fi-fa in custodia legis, and I refer you to the case of *Harris v. Max Kohner, Inc.,* 187 A. 2d 97, 230 Md. 349." The constable returned each writ *"nulla bona",*[1] to which no protest was made. About one week later these five appellants, as did Brookfield and Youngs, filed petitions in the equity case seeking priority of payment of claims ahead of general creditors.

The matter of priority was referred by the court to a master. His recommendation was to deny priority status to all the petitioners. The master based this suggestion as to the group of five appellants on the grounds that "the inchoate lien of the executing creditors never became consummate and any priority that may have been realized by execution failed to come into being by failure of the happening of the condition subsequent, to wit, an actual levy upon the goods." As to the other two, Brookfield and Youngs, priority was denied because the master concluded that "the liens of the two creditors never became consummate because execution, which must, when it can, include sale, was never completed; or, in the alternative that the liens were waived to the prejudice of other creditors by permitting the property to remain in the hands of the judgment debtor." Exceptions were filed to these recommendations but Judge Cardin overruled them and adopted the master's report. This appeal follows. As to the group of five appellants whose writs were returned *nulla bona* we will affirm the denial of priority but as to the other two creditors we shall reverse.

While we reach a different result concerning the claims of the two groups of appellants, the starting point and reasoning used to arrive at that end are identical. The principal contention of all appellants is that upon delivery of the writ of *fi fa* to the constable they each obtained a lien against the personal property of the debtor;

---

1. Such a return is permitted and merely states that the sheriff is unable to find in his bailiwick any property of the execution debtor liable to be seized. *See* 2 Poe, *Practice* § 677 (Tiffany ed. 1925).

this lien continued even after the trustee took possession of the property, and therefore, each is entitled to a priority. It is clear that the mere obtention of a judgment, unlike its effect on realty, creates no lien upon a debtor's personal property. *Harris, Tr. v. Max Kohner, Inc.*, 230 Md. 349, 187 A. 2d 97 (1963). The writ of *fi fa* is an early common law means of enforcing payment on a judgment. The annals and effect of a *fi fa* are well chronicled in this State in *Harris, Tr. v. Max Kohner, Inc., supra* and it is unnecessary to repeat here all that was so aptly stated there. *See also In Re Continental Midway Corporation*, 185 F. Supp. 867 (D. Md. 1960); 2 Poe, *Practice* § 666 (Tiffany ed. 1925); 33 C.J.S. *Executions* § 124 (1942). Here it will suffice only to summarize what was stated by those authorities. In Maryland a lien on personalty is created when a *fi fa* is issued and delivered into the hands of the sheriff or constable. This then bestows authority on him to levy against and sell the property of a judgment debtor to satisfy the obligation owed. This is different from the common law which recognized a lien being in effect as of the *teste* of the writ.[2] The Statute of Frauds, 29 Charles II, Ch. 3, § 16, was in effect in this State at all times pertinent to this case, and that statute modified the common law and made the effective date for the creation of a lien on personalty the date of delivery of the writ to the sheriff to be executed.[3] Upon delivery of the writ into the hands of the sheriff, an inchoate lien is created and if a proper levy is made on goods by the writ's return date a consummate lien is established which relates back to and is effective as of the date of receipt of the writ by the sheriff. *Harris, Tr. v. Max Kohner, Inc., supra* at 354; *Fur-*

---

2. In practice *teste* or test-day of a writ is the concluding clause of the writ and includes the date of issuance. It was this date of issuance at common law that marked the commencement of the lien. *Harris, Tr. v. Max Kohner, Inc.*, 230 Md. 349, 187 A. 2d 97 (1963); *Black's Law Dictionary*.

3. This statute was repealed in 1971 by Ch. 649, Laws of Maryland, codified as Art. 21, § 150 (1957, 1966 Repl. Vol.). But it may have been resurrected by Ch. 349, § 14-114 Laws of Maryland 1972 which will take effect on January 1, 1973.

*long v. Edwards,* 3 Md. 99 (1852). The validity of a writ continues no longer than its return date if it is not executed upon and it may expire sooner if the writ is returned without a levy. In other words, if no levy has been made by the writ's return date or a return is made *nulla bona,* as in this case, no levy can be made as the writ is *functus officio* and a new writ is necessary to effectuate a levy on the debtor's goods. *Gaither v. Martin,* 3 Md. 146 (1852); *Coombs v. Jordan,* 3 Bland 284 (1831); *In Re Continental Midway Corporation, supra* at 870-71; 2 Freeman, *Executions* § 202 (3d ed. 1900); 33 C.J.S. *Executions* § 131 (1942).

In levying on goods, the officer is required to go to the place where they are located and with the property in view and under his control profess to levy upon the goods and assume control of them by virtue of his execution with the avowed purpose of holding them for sale to satisfy the judgment for which the writ was issued. *Horsey v. Knowles,* 74 Md. 602, 22 A. 1104 (1891). This places the goods *in custodia legis* as of the date the writ was delivered to the sheriff and the lien's effectiveness is not destroyed by leaving the goods seized with the judgment debtor. *Harris, Tr. v. Max Kohner, Inc., supra; First Nat'l Bk. v. Corp. Comm.,* 161 Md. 508, 157 A. 748 (1932); *Horsey v. Knowles, supra; Harris v. Alcock,* 10 G.&J. 226 (1838). Once a proper levy has been made before the return date of the writ, a sale of the goods may be made after that date. *Busey v. Tuck,* 47 Md. 171 (1877); *Gaither v. Martin, supra.*

With this law in mind, we now examine its effect on the facts of the case here. Our holding in *Harris, Tr. v. Max Kohner, Inc.,* 230 Md. 349, 187 A. 2d 97 (1963) is particularly illuminating in ascertaining the priority rights of the group of five appellants whose writs were returned *nulla bona.* It should be remembered that these writs were delivered to the constable on November 2, 1970 and after the trustee had been appointed were returned *nulla bona,* although appellants' attorney, in his letter, had asked that they be returned *"in custodia legis."*

Even if the writs had been so returned, appellants' position would not be improved unless a levy had been made. While in his epistle counsel stated that he relies on *Harris*, which is similar in many respects to the case here, he has apparently misconstrued the holding of that case. There, when the sheriff, armed with a *fi fa* delivered to him on November 28, 1961, went to make a levy on December 1, 1961, he was met at the door of the debtor's house by a trustee appointed under a deed of trust for the benefit of creditors. The trustee objected to the levy being made, claiming *custodia legis* of the goods. Despite these remonstrations, the constable levied on the goods. The parties then entered into an agreement that permitted the trustee to sell the property and hold the proceeds for a determination by the court of the judgment creditor's claim for priority. In *Harris*, it is recognized that goods *in custodia legis* are not usually subject to levy. But that issue was not before the Court since the trial judge held that "if a valid lien were created on November 28, when Kohner delivered the writ to the Constable, or if an 'inchoate lien' were then created which later became consummate as of that date (by relating back to the date of delivery to the sheriff), then the *custodia legis* was that of the People's Court and the appellant 'took title subject to it.' " This Court in *Harris* was only called upon to determine a priority for payment and because it concluded that the inchoate lien, which was created on November 28, the date of deliverance of the writ to the sheriff, was later consummated by a levy, which related back to the November date, that claim took priority over the later assumption of possession by the trustee. No decision was reached in *Harris* as to which court had legal custody of the goods, or who should sell the goods since the parties resolved these questions by stipulation. All the Court decided was that since the constable's levy on the goods related back to a time earlier than when the trustee took possession of the goods, that claim had priority.

Here, with the group of five creditors, the same nar-

row issue of priorities confronts us. As in *Harris* the issue of who has authority to sell need not detain us since here no consummate lien was created because no levy was made. The constable, therefore, possessed no goods to sell. Once the writ was returned *nulla bona,* the inchoate lien was extinguished and there could be no relation back to any earlier date so as to bestow priority on these appellants. Rather than have the writs returned without a levy, appellants' attorney, relying on *Harris,* should have instructed the constable to complete execution by levying on the goods. But unfortunately for these appellants, the writ was returned *nulla bona* and no protest was made to the form of this return.[4]

The *Harris* Court specifically did not reach the issue which confronts us. There it was stated "we do not here reach the question of the effect of a return *nulla bona.*" We now answer that question and conclude that the inchoate liens acquired by these five creditors when their writs were received in the hands of the constable were extinguished with the return of the writs *nulla bona* and no longer exist as a foundation for obtaining a consummate lien upon which a priority can be constructed. *In Re Continental Midway Corporation,* 185 F. Supp. 867 (D. Md. 1960). We therefore affirm the judgment of the trial court as to this group of judgment creditors.

The priority claims of the remaining two appellants, Brookfield and Youngs, stand on a different footing. Brookfield obtained its judgment in the Court of Common Pleas on March 18, 1970 and a few days later, on March 26, caused a *fi fa* to be issued and delivered to the sheriff returnable on the first Monday in April. The sheriff's return of the writ, filed on March 31 of that year, states: "I have levied on the property described and mentioned in the annexed schedule under the within execution." Youngs obtained its judgment in the Peo-

---

4. There are a number of different returns that can be made on the writ. If dissatisfied, a party can seek an amendment. While it is possible that the instructions given here were a countermand of the writ, we do not decide that issue. *See* 2 Poe, *Practice* §§ 676-84 (Tiffany ed. 1925).

ple's Court of Baltimore City on December 23, 1969 and caused a *fi fa* to be issued and delivered to the constable on April 23, 1970 returnable two months later on June 23. Following a levy made on April 30, the constable returned the writ with the statement: "Levied as per schedule herewith returned. Chattels levied upon left where found at risk of Plaintiff as per Order filed in case."

The master concluded, and the trial judge agreed, that by permitting the goods to remain with the debtor while accepting weekly installment payments, these two appellants did not indicate a good faith effort to complete execution by proceeding to sale, or, alternatively, they had waived their liens. And priority was denied each of them. In support of this holding, reliance was placed on two Maryland cases, *Myers Co. v. Banking & Trust Co.*, 170 Md. 198, 183 A. 543 (1936), and *First Nat'l Bk. v. Corp. Comm.*, 161 Md. 508, 157 A. 748 (1932). We, therefore, examine these cases in some detail.

In *Myers,* Myers and the Trust Co. were both creditors of the insolvent Arundel Supply Company. The case arose on conflicting claims of preference to the assets of the Supply Company. Myers had received two judgments against the debtor on February 1, 1933, and on November 15 of that year, caused writs of *fi fa* to be issued. These were delivered to the sheriff three days later with the specific instruction from Myers, "Do not make levy, hold." As a consequence of this instruction no levy was ever made. This judgment creditor's avowed purpose in obtaining issuance of the writ was not to levy on the goods but to insure a priority over any other creditor who might have a *fi fa* issued. As was bound to happen, another creditor, the Trust Co., which had recovered a judgment against Arundel on March 16, 1933, caused a *fi fa* to be issued several months later, on December 7, with the levy being made four days later. On January 5, 1934 a deed of trust for the benefit of creditors was executed and the trustee took possession of all of Arundel's goods including those upon which levy had been made.

After sale of the property, priority was allowed in favor of the Bank over Myers. Judge Shehan reasoned for this Court:

"Out of this recital of facts there arises the obvious question: Can a judgment creditor acquire a continuing lien by the mere issuance of an execution, and thus convert the writ into an agency with which to hinder or delay, or entirely defeat, other judgment creditors in asserting similar rights by execution? Such is not the purpose of a writ of *fieri facias,* and it cannot be so used. In dealing with this question Judge Parke stated, in the case of *First National Bank v. Corporation Commission,* in 161 Md. 508, 157 A. 748, 751: 'If, however, it should appear that the levy was not made in good faith, nor for the purpose of its enforcement, as if the plaintiff's object was merely to obtain some security or to prevent some other levy being made in advance of his own, or to hinder or delay other creditors of the debtor, then the levy under the writ of attachment must be adjudged fraudulent and void.' "

\* \* \*

"The testimony shows that it was not the purpose of [Myers] to obtain a speedy settlement of its judgments, and that the writs were to be used, in the first instance, for the purpose of obtaining a security and to prevent or hinder or delay others from making levies and acquiring liens in advance of its own. To obtain such security seems to have been the principal object of [Myers]. This the law does not sanction or permit."

While *Myers* relies on *First Nat'l Bk.* as authority for its holding and accurately quotes what was stated in that case, when the same law was applied to the facts of *First Nat'l Bk.* a different result was reached. The First

National Bank leased a portion of its building to a tenant for a one year period which commenced on July 1, 1929, with the rent payable on the first of each month. On February 18, 1930, the Corporation Commission of North Carolina caused a nonresident attachment to be issued out of the Superior Court of Baltimore City against the tenant and the sheriff was instructed to seize all furniture in the debtor's office, schedule and appraise it, but to leave it where it was. A levy was made on February 20, 1930 complying with those instructions. At the time this was done all rent payments were current. On March 27, 1930 the attaching creditor, in order to permit an attempted refinancing to proceed, agreed not to press the attachment to sale. When four months passed without receiving any payment, on June 24, the creditor's attorney wrote to advise the debtor that he would proceed to sell the furniture if the debt was not paid soon. During the waiting period the tenant had become in arrears on rent payments, and on June 19, 1930 the landlord distrained for its rent. The goods distrained were the same ones levied upon. At the instigation of other creditors, in an equity proceeding, a receiver was appointed, and all the parties in interest agreed to permit sale by the receiver "and the proceeds of sale distributed in accordance with the respective rights of the parties as though there had been no sale." When the goods were sold, the Corporation Commission was given priority over the Bank because the chancellor decided that "the landlord must fail because its rent was not due at the time the goods and chattels were taken, and that then and thereafter these goods and chattels, and the proceeds thereof, were in the custody of the law by reason of the attachment and agreement." This Court affirmed the allowance of priority to the Corporation Commission whose levy had remained dormant for four months and stated that:

> "Whatever delay in the progress of the procedure, or indulgence in time granted to the debtor

"by the creditor, was in a reasonable effort to refrain from embarrassing the attempt of the debtor to meet its obligation to the plaintiff. So it is apparent from this record that no abuse of the writ was intended, and hence there was no constructive abandonment of the levy."

While the facts of neither of these two cases are identical to the ones before us now, we think that those present in *First Nat'l Bk.* are close enough for that decision to be controlling here. Brookfield and Youngs caused writs of *fi fa* to be issued in good faith and clearly for the purpose of collecting their debt. A speedy levy was made and nothing these appellants subsequently did was inconsistent with or indicated a relinquishment of that purpose. Their acceptance of the payments was consonant with the maintenance of the levy and was neither a constructive abandonment of it nor an abuse of the writ. This distinguishes the case here from *Myers,* where, under affirmative instructions of the creditor, no activity was ever undertaken to consummate the lien. We are not now confronted by a case where there was total inaction after the lien was consummated as the installment payments were accepted to reduce the debt. We recognize that through lack of good faith in obtaining the writ or improper action or inaction in executing it priorities can be lost. Likewise, a case may arise where the lien is left dormant for such an inordinate time as to evidence abandonment of it, but we do not think the six month delay here, coupled with the active pursuit of payment, creates such a case. We have found no Maryland case that goes so far as to require a loss of priorities under facts similar to those existing in this case.

In the case here, as in *Harris, Tr. v. Max Kohner, Inc.,* 230 Md. 349, 187 A. 2d 97 (1963), we are not required to decide who should conduct the sale, the sheriff or the trustee, as these two appellants have, in effect, by filing their petitions for priority in this equity case, consented to a sale by the trustee. We do think, however, they are

entitled to a priority in the distribution of the proceeds of that sale and, therefore, reverse the order of the trial judge so far as it denied priority to Brookfield and Youngs.

> *Order affirmed as to petitions of appellants Illi, Inc., Rucker Industries, Inc., Gerdau Company, Modeline Company, and Katzenback and Warren, Inc., and reversed as to petitions of Brookfield Furniture Co. and Youngs, Inc. and case remanded for the passage of an order directing distribution of the proceeds from the sale in accordance with the views herein expressed.*
>
> *Costs to be paid two-thirds by appellants Illi, Inc., Rucker Industries, Inc., Gerdau Company, Modeline Company, and Katzenback and Warren, Inc. and one-third by appellee.*