414 F.3d 507
 In re Michael BOGDAN, a/k/a Andrew Michael Bogdan; Inner City Management, LLC, Debtors.
Sean C. Logan, Chapter 7 Trustee, Trustee-Appellant,
v.
JKV Real Estate Services; Fidelity National Title Insurance; Stewart Title Guaranty Company; John K. Voyatzis, Defendants-Appellees.
 No. 04-1643.
 United States Court of Appeals, Fourth Circuit.
 Argued December 2, 2004.
 Decided July 6, 2005.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: Douglas Brooks Riley, Rosenberg, Martin, Funk & Greenberg, L.L.P., Baltimore, Maryland, for Appellant. Robert L. Ferguson, Jr., Ferguson, Schetelich & Ballew, P.A., Baltimore, Maryland; Richard L. Costella, Miles & Stockbridge, P.C., Baltimore, Maryland, for Appellees.
 ON BRIEF: Lawrence J. Yumkas, Sedica Sawez, Rosenberg, Martin, Funk & Greenberg, L.L.P., Baltimore, Maryland, for Appellant. Ann Doherty Ware, Ferguson, Schetelich & Ballew, P.A., Baltimore, Maryland, for Appellees JKV Real Estate Services, Inc., and John K. Voyatzis; Robert Scott Brennen, Matthew G. Summers, John Robert Fischel, Miles & Stockbridge, P.C., Baltimore, Maryland, for Appellee Stewart Title Guaranty Company; Brian Charles Parker, Parker, Dumler & Keily, L.L.P., Baltimore, Maryland, for Appellee Fidelity National Title Insurance Company.
 Before KING and SHEDD, Circuit Judges, and HENRY F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.
 Reversed and remanded by published opinion. Judge SHEDD wrote the opinion, in which Judge FLOYD joined. Judge KING wrote an opinion concurring in part and dissenting in part.
 OPINION
 SHEDD, Circuit Judge.
 
 
 1
 This bankruptcy appeal requires us to determine whether the bankruptcy trustee has standing to sue, as the assignee of certain creditors, to recover on behalf of the bankruptcy estate for damages caused to these creditors by the debtor's alleged coconspirators. The bankruptcy court dismissed the trustee's amended complaint, concluding that the trustee lacked standing to assert claims against the alleged coconspirators. The district court affirmed the bankruptcy court's judgment. Based on the unique facts and circumstances of this case, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 In 2000, Michael Bogdan and his corporation, Inner City Management, LLC (referred to collectively as "Bogdan") filed petitions for bankruptcy relief. The bankruptcy court appointed Sean C. Logan (the "trustee") as trustee of the Bogdan estate.
 
 
 3
 In 2001, Bogdan pleaded guilty to a federal criminal information alleging a single count of conspiracy to commit mail and wire fraud and to make false statements relating to his participation in the real estate scheme that is the subject of this adversary proceeding. In 2002, after conducting an extensive review of Bogdan's business activities, the trustee determined that nearly fifty other persons and entities — real estate appraisers, settlement agents, mortgage brokers, and title insurance companies — also participated with Bogdan in the real estate "flipping scheme" that defrauded numerous mortgage lenders by obtaining under-collateralized mortgage loans to purchase properties in Baltimore City. Twelve of these mortgage lenders that were injured by this scheme unconditionally assigned to the trustee all of their claims against Bogdan and his alleged coconspirators.
 
 
 4
 The trustee then filed this adversary proceeding in the bankruptcy court as the assignee of these mortgage lenders, alleging claims for civil conspiracy, intentional misrepresentation, fraudulent concealment, negligence, and breach of contract against four of Bogdan's alleged coconspirators. According to the trustee, if he prevails on his claims against the alleged coconspirators, the mortgage lenders will not recover any money from the adversary proceeding. Instead, the mortgage lenders will recover, if at all, only as creditors of the estate on a pro rata basis with all other creditors.[1] The trustee's amended complaint seeks nearly $1 million in actual damages and $500,000 in punitive damages relating to 39 mortgage loans.
 
 II.
 
 5
 The bankruptcy court dismissed the trustee's amended complaint, concluding that the trustee lacked standing to sue Bogdan's coconspirators for two reasons. First, the court ruled that the mortgage lenders' causes of action belong exclusively to them and not Bogdan's trustee because the action is premised on injury to the creditors, not Bogdan. The assignments by the mortgage lenders to the trustee do not, the court decided, give the trustee standing to pursue claims against the alleged coconspirators. Second, the court ruled that the trustee lacked standing based on the doctrine of in pari delicto, which bars a wrongdoer — such as Bogdan — from recovering against his coconspirators for injuries they jointly caused.
 
 
 6
 The district court affirmed based largely on the same reasoning as the bankruptcy court. In particular, the district court determined that the mortgage lenders, not the trustee, were the real parties in interest and that the trustee does not have standing to assert causes of action on behalf of creditors notwithstanding the assignments. The trustee now appeals.
 
 III.
 
 7
 We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. In re Merry-Go-Round Enters., 400 F.3d 219, 224 (4th Cir.2005). Specifically, "we review the bankruptcy court's factual findings for clear error, while we review questions of law de novo." Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.), 128 F.3d 203, 206 (4th Cir.1997).
 
 IV.
 A.
 
 8
 In affirming the dismissal of the amended complaint, the district court ruled that the trustee does not have standing to assert claims that belonged to the mortgage lenders, even though the mortgage lenders formally assigned their claims to the trustee. This ruling effectively establishes a per se ban on claims by trustees as assignees of creditors. The district court relied on the Supreme Court's opinion in Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), to support its ruling. We conclude, however, that Caplin is distinguishable for several reasons.
 
 
 9
 More than a decade before commencement of its bankruptcy proceedings, the debtor in Caplin issued debentures through Marine Midland Trust Company ("Marine"). One of the debtor's critical obligations under its agreement with Marine was that it maintain an asset-liability ratio of 2 to 1. This obligation was intended to protect the debenture holders from loss on their investments. The debtor was also required to file annual reports with Marine verifying its compliance with its obligations. Marine promised to exercise due care and skill in monitoring the debtor's compliance. Id. at 417-18, 92 S.Ct. 1678.
 
 
 10
 For several years after issuing the debentures, the debtor incurred such substantial financial losses that by the time it entered bankruptcy, the debtor had roughly three times more liabilities than assets, a clear violation of its debenture obligation. Id. at 418-19, 92 S.Ct. 1678. After conducting his investigation into the debtor's financial affairs, the trustee of the debtor's estate determined that Marine had either willfully or negligently failed to fulfill its duty to monitor the debtor's compliance with its obligations. The trustee filed an action against Marine on behalf of the debenture holders, not the debtor's estate. Id. at 420, 92 S.Ct. 1678. The district court dismissed the complaint, concluding that the trustee lacked standing to pursue claims on behalf of the debenture holders, and the Second Circuit affirmed. Caplin v. Marine Midland Grace Trust Co., 439 F.2d 118 (2d Cir.1971).
 
 
 11
 The Supreme Court affirmed for three reasons. First, the Court concluded that there was no provision in the bankruptcy laws allowing a trustee to assume the responsibility of suing on behalf of creditors of the estate. The Court held that a trustee is not authorized to "collect money not owed to the estate." Caplin, 406 U.S. at 428, 92 S.Ct. 1678. Second, the Court reasoned that the debenture holders, rather than the trustee, should be allowed to decide whether to sue Marine. These holders, the Court stated, "are capable of deciding for themselves whether or not it is worthwhile to seek to recoup whatever losses they may have suffered by an action against" Marine. Id. at 431, 92 S.Ct. 1678. Third, the Court concluded that because the debenture holders would not be bound by the judgment in the trustee's action against Marine, they would be able to sue Marine directly in a separate suit, thereby increasing the amount and complexity of litigation relating to the losses suffered by the debenture holders. Id. at 432, 92 S.Ct. 1678. For these reasons, the Court held that the trustee lacked standing to sue Marine. Id. at 432-34, 92 S.Ct. 1678.
 
 
 12
 The facts of this case and Caplin are substantially different. It does not follow from the reasons advanced by the Court in Caplin that the trustee lacks the necessary standing in this case to assert his claims against Bogdan's alleged coconspirators on behalf of Bogdan's estate. First, while the trustee in Caplin attempted to assert claims directly on behalf of the debtor's creditors, Bogdan's trustee is not making any claim on behalf of the creditors. By taking unconditional assignments from the creditors, the trustee, as assignee, is making his claim on behalf of Bogdan's estate, not on behalf of the mortgage lenders. The mortgage lenders will recover nothing directly from any recovery attained from the trustee's adversary proceeding against Bogdan's alleged coconspirators. The mortgage lenders will recover, if at all, like any other creditor of the estate, by sharing from the assets the trustee is able to collect on behalf of the estate.
 
 
 13
 Second, unlike the debenture holders in Caplin, the mortgage lenders in this case have affirmatively elected how best to deal with their claims against Bogdan's alleged coconspirators. By unconditionally assigning their claims to the trustee, the mortgage lenders have decided to abandon their claims against the alleged coconspirators to allow the trustee to seek recovery against them on behalf of the estate. Thus, the mortgage lenders have chosen to attempt to recover, if at all, as creditors of the estate along with all the other estate creditors.
 
 
 14
 Third, unlike in Caplin, there is no potential for duplicative and inconsistent litigation by the mortgage lenders who have assigned their claims to Bogdan's trustee. By giving the trustee unconditional assignments of their potential claims, the mortgage lenders have relinquished all rights to seek recovery against Bogdan and the alleged coconspirators. Thus, the district court's per se ban on trustee suits based on assignments from creditors finds no support in Caplin.
 
 
 15
 Contrary to the district court's per se prohibition, the Bankruptcy Code implicitly authorizes such a suit under the particular facts and circumstances of this case. Under the Code, a bankruptcy trustee represents the estate and "has capacity to sue and be sued." 11 U.S.C. § 323(b). The trustee is specifically authorized to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." Id. § 704(1) (emphasis added). The meaning of "property of the estate" under the Code has been construed "broadly to encompass all kinds of property, including intangibles." Integrated Solutions, Inc. v. Service Support Specialties, Inc., 124 F.3d 487, 490 (3d Cir.1997). More specifically, "property of the estate" under § 541(a) has "uniformly been interpreted to include causes of action." Polis v. Getaways, Inc. (In re Polis), 217 F.3d 899, 901 (7th Cir.2000). "[P]roperty of the estate" also includes "[a]ny interest in property that the estate acquires after the commencement" of a bankruptcy case. 11 U.S.C. § 541(a)(7). Thus, the unconditional assignments acquired by Bogdan's trustee from the mortgage lenders after commencement of this bankruptcy case constitute "property of the estate" that the trustee is authorized to "collect and reduce to money" on behalf of the estate. See Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.), 225 B.R. 646, 650 (Bankr.N.D.Ill.1998) (ruling that the creditors' assignments turned the "causes of action into property of the estates and the Trustee has a duty to marshal those assets for the benefit of the estates"), aff'd in part and rev'd in part on other grounds, 2000 WL 28266 (N.D.Ill. Jan.12, 2000)(unpublished). Accordingly, the trustee has the requisite standing to sue Bogdan's alleged coconspirators "to collect and reduce to money" the causes of action he acquired for the estate from the mortgage lenders after commencement of this bankruptcy case.
 
 
 16
 The alleged coconspirators nevertheless argue that the unconditional assignments do not confer standing on Bogdan's trustee, citing the Ninth Circuit's opinion in Williams v. California 1st Bank (In re Estate of Chacklan Enters., Inc.), 859 F.2d 664 (9th Cir.1988). We conclude, however, that Williams actually suggests that the unconditional assignments acquired by Bogdan's trustee sufficiently confer standing.
 
 
 17
 The debtor in Williams allegedly participated with the defendant bank in a "Ponzi" scheme defrauding investors. The bankruptcy trustee solicited and obtained assignments from some of the injured investors and brought an action against the bank. Rather than unconditional assignments, these injured investors gave up their claims in exchange for the trustee's promise to recommend to the bankruptcy court that these particular investors only receive the balance of any recovery the trustee might secure in the lawsuit against the bank after the estate paid priority claims and recouped its administrative costs. Id. at 665.
 
 
 18
 The Ninth Circuit decided that the trustee lacked standing notwithstanding the assignments. The court concluded that the investors remained the "real parties in interest" because "the bulk of any recovery" had been reserved specifically for them. Id. at 666. The court reasoned that the investors, in effect, "assigned their claims only for purposes of bringing suit" and, as a result, the trustee was improperly attempting to collect money owed to the investors, not the estate. Id. at 667.
 
 
 19
 The unconditional assignments acquired by Bogdan's trustee differ substantially from the assignments the trustee acquired in Williams. As asserted by Bogdan's trustee, the assignments he obtained do not reserve any part of the potential recovery exclusively for the mortgage lenders that assigned their claims. Unlike the investors in Williams, the mortgage lenders in this case will recover, if at all, by sharing from the general assets of the estate on a pro rata basis with all other creditors. So, unlike the trustee in Williams, Bogdan's trustee is seeking to collect money it claims the alleged coconspirators owe the trustee as assignee and representative of the estate, not money owed to specific creditors. Accordingly, Bogdan's estate is the real party in interest in this adversary proceeding.
 
 
 20
 The alleged coconspirators also complain that allowing bankruptcy trustees to sue based on assignments would dramatically and improperly expand the jurisdiction of the bankruptcy courts. They warn that such a rule would prompt trustees to seek out and purchase unrelated causes of action and pursue them in adversary proceedings in hope of increasing the assets of the estate.
 
 
 21
 This concern is unwarranted specifically in this case and generally in the broader bankruptcy practice context. As for this case specifically, the alleged coconspirators concede that no estate assets were paid to acquire the assignments from the mortgage lenders. Moreover, the trustee and the alleged coconspirators agree that this adversary proceeding is directly related to the bankruptcy case. The collapse of the "flipping scheme" caused, at least in part, Bogdan's bankruptcy.
 
 
 22
 More generally, our holding in this case is unlikely to lead trustees to hunt down and purchase assignments of causes of action unrelated to the bankruptcy case. The Bankruptcy Code gives bankruptcy courts broad discretion to monitor all aspects of bankruptcy cases and to prevent abuses of process. See, e.g., 11 U.S.C. § 105(a) (providing that bankruptcy courts may, sua sponte, take action to prevent an abuse of process); id. § 330 (granting bankruptcy courts authority to approve or reject, based on a wide-range of factors, compensation applications by trustees for expenses incurred and services rendered). Moreover, our cases establish that trustees must always act in the best interest of the estate. See, e.g., Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 752 (4th Cir.1993) (stating that "[e]quity tolerates in bankruptcy trustees no interest adverse to the trust") (quoting Mosser v. Darrow, 341 U.S. 267, 271, 71 S.Ct. 680, 95 L.Ed. 927 (1951)). These checks and balances will help ensure that trustees forego actions not in the best interests of the bankruptcy estate.
 
 B.
 
 23
 The district court also ruled that the trustee lacks standing based on the doctrine of in pari delicto. We disagree.
 
 
 24
 The common-law doctrine of in pari delicto (meaning "of equal fault") is often described as an affirmative defense that bars a wrongdoer from recovering against his alleged coconspirators. See Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 135, 138, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), overruled on other grounds by Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984); Burlington Indus., Inc. v. Milliken & Co., 690 F.2d 380, 387 (4th Cir.1982). This doctrine has no application in this adversary proceeding because the trustee is suing on behalf of the estate as assignee of the mortgage lenders. As assignee, the trustee stands in the shoes of the mortgage lenders, thereby assuming all rights and interests that the mortgage lenders have in the causes of action and becoming subject to all defenses that could have been asserted against the mortgage lenders, not Bogdan. See James v. Goldberg, 256 Md. 520, 261 A.2d 753, 757 (1970); Harris v. Max Kohner, Inc., 230 Md. 349, 187 A.2d 97, 100 (1963). Because there is no allegation that the mortgage lenders were involved in any wrongdoing relating to the "flipping scheme," the alleged coconspirators cannot assert the defense of in pari delicto against the trustee, as assignee of the mortgage lenders, to bar recovery by the trustee on behalf of the estate.
 
 
 25
 The alleged coconspirators complain that allowing the trustee to recover on behalf of the estate in this proceeding could ultimately result in Bogdan personally recovering from his alleged coconspirators — the precise inequity the doctrine of in pari delicto is designed to avoid. This could happen, the alleged coconspirators assert, if the trustee recovers more money than necessary to satisfy all the creditors' claims. They claim that, if that occurs, the bankruptcy court would be required to distribute the surplus property of the estate to Bogdan personally. See 11 U.S.C. § 726(a)(6).
 
 
 26
 First, from a practical standpoint, it appears that the potential for Bogdan to make any personal recovery does not realistically exist. The trustee seeks to recover a total of $1.5 million in this adversary proceeding, all of which will become property of the estate available to pay claims against the estate. The trustee represents that the mortgage lenders have filed claims against the estate seeking most of this amount. Moreover, the trustee represents that at least $1.5 million in additional claims unrelated to the "flipping scheme" have also been filed by other creditors against the estate. Thus, any monies recovered in this proceeding would not likely satisfy all the claims against Bogdan's estate, and there would be no surplus assets to distribute to Bogdan.
 
 
 27
 Second, in the unlikely event that any property of the estate will remain after all claims and legal and administrative fees of the estate have been satisfied, the alleged coconspirators could pursue other remedies to keep Bogdan from personally recovering as a result of his criminal conduct. For instance, the alleged coconspirators can attempt to raise the doctrine of in pari delicto against Bogdan personally at that stage of the bankruptcy case. Or, as some other courts have suggested, the alleged coconspirators could seek to assert subrogation claims against Bogdan. Caplin, 406 U.S. at 430, 92 S.Ct. 1678; Williams, 859 F.2d at 667.[2] Nevertheless, the remote chance that Bogdan might personally receive a distribution of estate property from his bankruptcy estate should not deter the more fundamental policy undergirding the bankruptcy system: allowing the trustee to maximize the value of the estate so that the claims against the debtor are paid to the fullest extent possible. Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 352, 355, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). The trustee's adversary proceeding in this case is particularly appropriate because the trustee is seeking to maximize the value of the estate by attempting to collect money now owed to the estate — by virtue of the assignment — from the very individuals and entities that he claims wrongfully caused, at least in part, the losses sustained by Bogdan's creditors.[3]
 
 V.
 
 28
 For the foregoing reasons, the judgment of the district court is reversed, and we remand for further proceedings consistent with this opinion.
 
 
 29
 
 REVERSED AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 Although he did not attach copies of the assignments to his amended complaint, the trustee provided copies of some of the assignments to the alleged coconspirators during the bankruptcy court proceedings and represented to that court that the assignments are unconditional, meaning that the estate is the only entity that could possibly make any recovery in this adversary proceeding. Neither the bankruptcy court nor the district court found it necessary to construe the provisions of the assignments, instead concluding that the trustee lacked standing to sue regardless of what the assignments provided. Copies of the assignments are not included in our appellate record. Nevertheless, the trustee repeats his representation that the assignments give him an unconditional right to recover all monies on behalf of the estate, and the mortgage lenders may recover, if at all, only as creditors of the estate. The alleged coconspirators do not attack this representation, and we assume it to be true for purposes of this appeal
 
 
 [2]
 We do not decide that the alleged coconspirators could successfully assert these defenses. Instead, we state only that they can attempt to assert them
 
 
 [3]
 The dissent suggests that the bankruptcy and district courts merely exercised their discretion in invoking the equitable defense ofin pari delicto and that we should not disturb these rulings. We cannot, however, affirm a lower court's ruling if it is based on erroneous legal principles. See Koon v. United States, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In this case, both the bankruptcy and district court's rulings were based on a misapplication of Caplin or cases following Caplin.
 
 
 
 30
 KING, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 Although I am constrained to partially concur in the panel majority's decision, I write separately for two reasons. First, the majority's position on standing depends entirely on the legality of the assignments under Maryland law, and because the assignments were not presented to the lower courts, their validity remains subject to question. My partial concurrence is thus subject to this caveat, in that the assignments may well be invalid. Second, I disagree with the view of my friends in the majority that the trustee is not subject to the defense of in pari delicto.
 
 I.
 
 32
 I first briefly address the issue of standing and the problem of the assignments. In Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), the Supreme Court held that a reorganization bankruptcy trustee lacked standing to assert claims against third parties on behalf of the holders of the debtor's debentures. The Court premised its ruling on three bases: (1) the applicable bankruptcy statute failed to authorize the trustee to assert such claims; (2) the debenture holders, rather than the trustee, were obliged to decide whether to sue third parties; and (3) such claims asserted by the trustee may be inconsistent with independent actions pursued by debenture holders, enhancing the extent and complexity of the litigation. 406 U.S. at 428-34, 92 S.Ct. 1678. In this proceeding, as the majority observes, the second and third Caplin factors bear no relationship to the claims asserted by the Bogdan trustee. The determinative question thus implicates the first Caplin factor only, that is, whether the Bankruptcy Code authorizes the claims asserted in the Bogdan trustee's adversary proceeding. See Cissell v. Am. Home Assurance Co., 521 F.2d 790, 792 (6th Cir.1975) ("As a creature of statute, the trustee in bankruptcy has only those powers conferred upon him by the Bankruptcy [Code].").
 
 
 33
 By § 704(1) of the Bankruptcy Code, a Chapter 7 trustee is authorized to "collect and reduce to money the property of the estate." 11 U.S.C. § 704(1). Because claims of the debtor constitute property of a bankruptcy estate under § 541(a)(1) of the Code, § 704(1) grants the debtor's trustee the right to assert causes of action on behalf of the debtor. 11 U.S.C. §§ 541(a)(1), 704(1); see Polis v. Getaways, Inc., (In re Polis), 217 F.3d 899, 901 (7th Cir.2000) (noting that § 541(a) has "uniformly been interpreted to include causes of action"). If a claim belongs solely to the creditors, however, the debtor's trustee has no standing to pursue it. Caplin, 406 U.S. at 434, 92 S.Ct. 1678. And whether a particular claim belongs to the debtor, thus constituting "property of the estate," depends upon state law. Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 135 (4th Cir.1988); see also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 156-57 (2d Cir.2003) (holding that state law claims assigned to bankruptcy trustee belonged to debtor under Texas law and thus that trustee possessed standing).
 
 
 34
 Under Maryland law (which applies in this dispute), a cause of action arising in either contract or tort is generally considered to be an assignable claim. See Med. Mut. Liab. Ins. Soc'y of Md. v. Evans, 330 Md. 1, 622 A.2d 103, 116 (1993). The complaint filed by the Bogdan trustee alleges that the mortgage lenders have assigned to him state law claims of civil conspiracy, intentional misrepresentation, fraudulent concealment, negligence, and breach of contract. Because the trustee, as assignee, is the real party in interest under Maryland law, the causes of action alleged in the complaint constitute apparent claims of the debtor. Bacon & Assocs., Inc. v. Rolly Tasker Sails (Thailand) Co., 154 Md.App. 617, 841 A.2d 53, 66 (Ct.Spec.App.2004)(holding that an "`assignment passes the title to the assignee so that he is the owner of any claim arising from the chose and should be treated as the real party in interest'") (emphasis added) (quoting 6A C.A. Wright, A.R. Miller, & M.K. Kane, Federal Practice and Procedure: Civil 2d § 1545, at 346 (1990)); cf. Williams v. Cal. 1st Bank, 859 F.2d 664, 666 (9th Cir.1988) (holding trustee lacked standing to bring suit on assigned claims in part because creditors remained "real party in interest").
 
 
 35
 This analysis, however, is predicated entirely on the assumed validity of the assignments, a proposition we accept in viewing the complaint in the light most favorable to the trustee. See Fed.R.Civ.P. 12(b)(6); Lambeth v. Bd. of Comm'rs of Davidson County, N.C., 407 F.3d 266, 268 (4th Cir.2005) ("[W]e accept as true the factual allegations of the challenged complaint, and we view those allegations in the light most favorable to the plaintiff.") (internal citations omitted). As I see it, the assignments here are likely invalid under Maryland law, which precludes the assignment of claims if it contravenes public policy. See, e.g., Pub. Serv. Comm'n of Md. v. Panda-Brandywine, LP, 375 Md. 185, 825 A.2d 462, 469 (2003) (relying on Restatement (Second) §§ 317-23 (1981) of Contracts that assignments are valid unless inoperative on grounds of, inter alia, public policy). In this proceeding, the trustee for the estate of a tortfeasor is seeking to sue the debtor's joint tortfeasors. Put simply, one of several thieves, purportedly acting on behalf of his victims, is suing his fellow thieves. The stench arising from such a proceeding — being pursued in a federal court of equity — cannot be concealed by any amount of perfume. And, under Maryland law, the joint-tortfeasor defendants are entitled to counterclaim against the trustee for contribution, on both the trustee's contract and tort claims, if a judgment is rendered against them. See Md. Cts. & Jud. Proc.Code Ann. § 3-1402(a) (2004) ("The right of contribution exists among joint tort-feasors."); see also Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs., 109 Md.App. 217, 674 A.2d 106, 137 (Ct.Spec.App.1996) ("[C]ontribution is not limited to tort cases.").
 
 
 36
 The pursuit of this proceeding thus appears to impose on the Bogdan trustee an untenable conflict of interest, in contravention of Maryland's public policy. On the one hand, the trustee, as assignee, is suing the defendants for their tortious activities and, on the other, he must defend the debtor, admittedly a joint tortfeasor in those same illegal activities. See Md. R. Prof. Conduct 1.7, Conflict of Interest (barring attorney from representing clients if that representation will be materially limited by lawyer's responsibilities to another client or to third person).[1] Because — and only because — the bankruptcy and district courts have not had occasion to address the potential invalidity of the assignments, I concur in the standing aspect of the panel decision. As I see it, however, the assignments are probably invalid under Maryland law.
 
 II.
 
 37
 Turning to the issue of the in pari delicto defense, I disagree with the panel majority that the Bogdan trustee, as assignee of the claims, is only subject to defenses which the defendants could have raised against the mortgage lenders. The decisions upon which the majority relies on this issue, James v. Goldberg, 256 Md. 520, 261 A.2d 753 (1970), and Harris v. Max Kohner, Inc., 230 Md. 349, 187 A.2d 97 (1963), are inapposite — they stand for the mere proposition that equitable defenses which the defendants possess against the assignor may likewise be raised against the assignee. See James, 261 A.2d at 757 ("An unqualified assignment generally operates to transfer to the assignee all of the right, title and interest of the assignor in the subject of the assignment and does not confer upon the assignee any greater right than the right possessed by the assignor."); Harris, 187 A.2d at 100 ("[A] trustee for creditors stands in the shoes of his assignor and takes the property subject to all equities against the assignor.") (internal quotation marks omitted). Although a trustee may stand in the shoes of creditors, the James and Harris decisions do not support the proposition that the defendants are precluded from raising validly held defenses against the Bogdan trustee.
 
 
 38
 Furthermore, the defense of in pari delicto is an equitable doctrine, and under Maryland's formulation of that defense, the courts are to be concerned with "`the policy of the law.'" Schneider v. Schneider, 335 Md. 500, 644 A.2d 510, 517 (1994) (quoting Cronin v. Hebditch, 195 Md. 607, 619-20, 74 A.2d 50 (Md.1950)); see also Tanvir Alam, Fraudulent Advisors Exploit Confusion in the Bankruptcy Code: How In Pari Delicto Has Been Perverted to Prevent Recovery for Innocent Creditors, 77 Am. Bankr.L.J. 305, 315 (2003)("[I]n pari delicto is a highly flexible equitable doctrine easily adoptable to peculiar fact scenarios and crucially concerned with fair outcomes."). Indeed, a court may strike the defense of in pari delicto "if the equities call for such a limitation," but the "court may exercise `the [furthest] breadth of its discretion'" in determining its applicability. Brown & Sturm v. Frederick Road Ltd. P'ship, 137 Md.App. 150, 768 A.2d 62, 89 (Ct.Spec.App.2001) (quoting Goldman, Skeen & Wadler, P.A. v. Cooper, Beckman, & Tuerk, LLP, 122 Md.App. 29, 712 A.2d 1, 8 (Ct.Spec.App.1998)). Here, both the bankruptcy and district courts have properly exercised their discretion in that regard, and each has concluded that the trustee is subject to the in pari delicto defense in this proceeding. See Logan v. JKV Real Estate Servs., Inc. (In re Inner City Mgmnt., LLC), No. Civ. AMD 04-438, slip op. at *7, 2004 WL 964284 (D.Md. May 5, 2004); Logan v. Kramer, (In re Inner City Mgmnt., LLC), 304 B.R. 250, 254 (Bankr.D.Md. 2003).[2] In my view, these rulings are not erroneous, and I therefore agree with these courts that the trustee is subject to the in pari delicto defense. Logan, No. Civ. AMD 04-438, slip op. at *7, 2004 WL 964284; Logan, 304 B.R. at 254.
 
 
 39
 Pursuant to the foregoing, I concur in part and dissent in part.
 
 
 
 Notes:
 
 
 [1]
 In addition to the conflict of interest problems facing the Bogdan trustee, other public policy concerns are apparent. For example, some state courts have held that it is against public policy to permit a joint tort-feasor to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributedSee, e.g., Int'l Proteins Corp. v. Ralston-Purina Co., 744 S.W.2d 932, 934 (Tex.1988); see also BHI Corp. v. Litgen Concrete Cutting & Coring Co., 214 Ill.2d 356, 292 Ill.Dec. 906, 827 N.E.2d 435, 438-39 (2005) (holding assignment of tort claims to settling defendants contravened public policy of Illinois' contribution scheme); Dejong v. B.F. Goodrich, Inc., 96 Mich.App. 36, 292 N.W.2d 157, 159-60 (1980) (holding assignment of wrongful death action to insurer of tortfeasor violated public policy); Coleman Powermate, Inc. v. Rheem Mfg. Co., 880 So.2d 329, 335 (Miss.2004) ("No jurisdiction has yet authorized one tortfeasor to bring an action against a joint tortfeasor as assignee of the wrongful death beneficiaries.").
 
 
 [2]
 One final point: as I see it, the lower courts incorrectly conflated the applicability of thein pari delicto defense with the issue of standing. The standing question is properly a separate issue from whether the defense of in pari delicto applies. See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346 (3rd Cir.2001) ("An analysis of standing does not include an analysis of equitable defenses, such as in pari delicto. Whether a party has standing to bring claims and whether a party's claims are barred by an equitable defense are two separate questions, to be addressed on their own terms.").